## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 11 2018, 7:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Adam Lenkowsky
Roberts & Bishop
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Danielle L. Gregory
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tasima M. Collyear-Bell, <br> *Appellant-Respondent,* <br><br> v. <br><br> Dennis T. Bell, <br> *Appellee-Petitioner.* | May 11, 2018 <br><br> Court of Appeals Case No. <br> 49A05-1709-DR-2076 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Heather A. Welch, Judge <br><br> The Honorable Jeffrey L. Marchal, Magistrate <br><br> Trial Court Cause No. <br> 49D01-1107-DR-25874 |

**Mathias, Judge.**

[1]     Tasima M. Collyear-Bell ("Mother") appeals the order of the Marion Superior Court awarding primary physical custody of her minor daughter, J.C.B., to the

child's father and Collyear's ex-husband, Dennis T. Bell ("Father"). On appeal, Mother presents four issues, which we consolidate and restate as the following two: (1) whether the trial court abused its discretion when it granted physical custody of J.C.B. to Father, and (2) whether the trial court abused its discretion by denying Mother's motion to reopen the evidence and submit documentary evidence of her gross weekly income that would substantially reduce her child support obligation. We affirm the trial court's modification of primary physical custody in favor of Father, but reverse the trial court's child support calculation, and remand with instructions.

## Facts and Procedural History

[2] Mother and Father married on January 4, 2007, and their only child together, J.C.B., was born in August 2008. The parties separated in April 2009. Thereafter, on September 6, 2011, Father filed a petition for dissolution of the marriage. The trial court dissolved the parties' marriage on December 20, 2012 and awarded primary physical custody of J.C.B. to Mother and awarded both parties joint legal custody of the child. Father was ordered to pay $174.52 per week in child support.

[3] Father exercised regular parenting time with J.C.B., and the majority of J.C.B.'s family lived in or near Indiana. On May 31, 2015, Mother moved to Texas with her boyfriend, who had family in Texas. Precisely how much

Mother told Father about her plan to move to Texas is disputed by the parties.[1] Regardless, Mother did not file the statutorily required notice of her intent to move. *See* Ind. Code §§ 31-17-2.2-1 to -6.

[4] After Mother moved, J.C.B. stayed with Father for the summer, then went to stay in Texas with Mother in September 2015. J.C.B. did well in Texas, where she was enrolled in a class for children with special educational needs. J.C.B. made friends at school and received good grades. But at some point, in the late fall of 2016, J.C.B. got in trouble at school for making a rude comment to another student. On December 12, 2016, Mother decided to punish J.C.B. by whipping her with a belt. Mother made J.C.B. strip down to her t-shirt, underwear, and socks and lie across the bed. Mother then hit the child several times with the belt. J.C.B. moved around during the whipping, causing Mother to strike her in several places. At one point, J.C.B. got up and ran around the room. Mother then made J.C.B. lay back on the bed to continue the whipping. Mother stopped the whipping when she noticed that J.C.B. had a bruise on her arm.

---

[1] Mother testified that she told Father about her plans to move prior to moving. Father gave conflicting testimony regarding whether Mother told him of her plans prior to the move. Father initially admitted that Mother told him in October 2014 that she would be moving to Texas. Tr. p. 64. He also testified that Mother told him she planned to move to Texas, but that he had not paid attention to what she had said. *Id.* at 65. When questioned by his counsel, Father again admitted that Mother told him about her plans to move in October of 2014, but then later stated that she did not tell him that she was moving until June 2015, after the move took place. *Id.* at 69–71.

[5] The following day, J.C.B.'s teacher referred her to the school nurse after seeing that J.C.B. had a bruise on her eye. The school then reported J.C.B.'s injuries to the Texas Department of Family Protective Services ("DFPS"). The DFPS's "Allegation Detail" reported as follows:

> Worker did interview [J.C.B.] She did make an outcry of getting spanked with a belt Monday for having a Yellow on her report. Worker observed during the interview a mark with a bruise [] under her right eye, marks and bruises on her chest, bruises on both arms from her shoulder to her wrist, bruises on both thighs, and [a] bruise on the left side of her back, she also had bruises on her stomach.

Ex. Vol., GAL Ex. 1, Attachment p. 4.

[6] The DFPS report also stated that the bruise under J.C.B.'s eye was shaped like a belt buckle. J.C.B. reported to the DFPS investigator that Mother was angry with her when she was whipped with the belt and that Mother had also hit her with a switch. J.C.B. also stated that Mother knew about the bruises and marks on her and told her, "that is what you get for putting you[r] hands and legs in the way." *Id.* at 22. J.C.B. also told the DFPS investigator that, if she got in trouble at school, Mother would whip her in the morning and evening. She also would get whipped if she misbehaved at home.

[7] As a result of its investigation into the physical abuse, DFPS removed J.C.B. from Mother's home and contacted Father to request that he pick up the child, take her back to Indiana, and file for custody. Mother objected and preferred her pastor to take J.C.B. DFPS closed its investigation with a determination

that, by a preponderance of the evidence, Mother physically abused J.C.B. The DFPS report indicated that criminal charges were being prepared against Mother, but no criminal charges were ever filed.

[8] On March 13, 2017, Father filed a petition seeking custody of J.C.B. and to terminate his child support obligation and instead receive child support from Mother. On May 16, 2017, the parties appeared by counsel and agreed Father would have temporary physical and legal custody of J.C.B. and Father's child support obligation would terminate. The trial court issued an order granting Father temporary physical custody of J.C.B. on May 23, 2017. The following day, Father requested that the trial court appoint a guardian ad litem ("GAL"), which the trial court granted on May 26, 2017. The GAL submitted his report on July 21, 2017, and a supplemental report on July 25, 2017.

[9] The trial court held a hearing on Father's petition to modify custody on August 1, 2017. Following the hearing, Mother moved to amend her testimony concerning her income, alleging that she had misstated her weekly income during her testimony at the hearing. Father opposed the motion, and the trial court denied it on August 9, 2017.

[10] On August 21, 2017, the trial court entered findings of fact and conclusions of law granting Father's petition to modify custody. The order provides in relevant part:

> 10. J.C.B. has a learning disability as to math. Mother enrolled the child in a special needs class at Thurgood Marshall

Elementary and arranged for private tutoring. J.C.B. was receiving A's and B's at her school in Texas.

11. Mother resides in an apartment with her boyfriend in Dallas, Texas. J.C.B. has her own bedroom in this apartment.

12. In December 2016, the Texas Department of Family and Protective Services ("DFPS") initiated an abuse investigation against Mother.

* * *

14. DFPS found there was reason to believe that physical abuse of J.C.B. by Mother had occurred.

15. The DFPS report noted that Mother had inflicted excessive corporal punishment on J.C.B., resulting in a bruise in the shape of a belt on her right cheek, a bruise under her right eye, marks and bruises on her chest, and bruises on both arms from shoulder to wrist, on both thighs, and on the left side of her back and on her stomach.

16. When interviewed by DFPS, J.C.B. reported that the bruises were the result of a "whooping" administered by her Mother as punishment for saying something inappropriate at school.

17. J.C.B. provided a detailed account of the incident in a forensic interview conducted on December 20, 2016. Her account will not be recited verbatim here but is incorporated by reference.

18. Mother initially denied physically abusing J.C.B. Her explanation of the visible injuries on J.C.B. was found to be inconsistent with the injuries sustained.

19. As found in the GAL report, Mother, Mother's boyfriend, J.C.B., and J.C.B.'s half-sister all have advised that a particular mark on J.C.B.'s face was caused by a girl at daycare. This mark notwithstanding, the evidence shows that Mother was responsible for the remaining marks and bruises.

20. Mother was more forthcoming at the hearing on August 1, 2017. Mother confirmed that she administered corporal

punishment to J.C.B. on the day in question as punishment for inappropriate language the child used at school.

21. As testified to by Mother, she had J.C.B. take off her pants and lay on her bed. Mother then proceeded to strike the child with a belt. J.C.B. then attempted to run away.

22. Mother began striking the child again with the belt. Mother explained the bruising on J.C.B.'s arm was the result of the child turning away from the strikes.

23. Mother then treated the affected areas with ice packs and lotion.

24. Mother's testimony at the hearing was largely consistent with the description of events provided by [J.C.B.] on December 20, 2016.

25. Mother asserts that the child has a medical condition which causes her to bruise easily.

26. Although this may explain the bruises observed, in the Court's view, the child's medical condition does not excuse the excessive punishment administered by Mother.

27. J.C.B. advised the forensic interviewer that when she gets in trouble, she usually gets a "whooping" as punishment.

28. As reported by the GAL, Mother and her boyfriend use corporal punishment with J.C.B. when other forms of discipline have been unsuccessful. In such instances, Mother uses a belt for spankings with 5–6 "licks" for a single spanking.

29. Mother testified that she has used corporal punishment in the past with J.C.B. and with her oldest daughter. Mother denies that any discipline administered to her children has been excessive.

30. Father could not recall observing any prior instance of abuse towards J.C.B. by Mother during the marriage.

31. Father does not employ corporal punishment with J.C.B.

**32. Based upon all of the evidence presented, the Court finds that this incident of corporal punishment, in which a belt was used by Mother to strike the child, was not isolated.** While it is

certainly not Mother's standard method of parental discipline, this is not the first time she has struck J.C.B. with a belt.

**33. While there is not sufficient evidence to support a finding that prior punishments for J.C.B. have been excessive as to the resulting injuries, the Court does find that the punishment carried out here was excessive and exceeds any reasonable parental discipline of a child.**

\* \* \*

40. DFPS recommended to Mother that she take parenting classes. To date, she has not followed this recommendation.

41. Father returned J.C.B. to Indianapolis in January of 2017.

42. Father enrolled the child in Fox Hill Elementary. J.C.B.'s grades dropped to C's and D's following her transfer. Father enrolled the child in summer school so that she could advance with her class.

43. Father resides in a one-bedroom apartment. J.C.B. sleeps in Father's room while he sleeps in the family room. Father intends to get a larger apartment if he is granted physical custody.

\* \* \*

53. [J.C.B.'s adult half-sister] advised the GAL that J.C.B. vacillates on whether she prefers to reside in Texas or Indiana. This contradicts J.C.B.'s statement to the GAL that she wanted to remain with Father in Indiana and not return to Texas.

**54. Having considered the conflicting evidence, the Court finds that J.C.B. prefers to reside with Father.**

55. As found in the GAL report, J.C.B. has been involved with her church choirs in both Texas and Indiana. J.C.B. does not favor one parent over another and enjoys spending time with both parents.

56. The Court agrees with the GAL's assessment that J.C.B.'s safety and stability in her home life are paramount in determining her custody.

**57. The Court finds that J.C.B. has adjusted well to her home with Father and to her new school since her return to Indianapolis.**

58. The Court also agrees with the GAL that both parents are capable for providing an adequate home environment for J.C.B.

59. Father did not express any concerns with Mother exercising non-supervised parenting time with J.C.B. It is the recommendation of the GAL that Mother's parenting time be unsupervised.

* * *

**64. As shown above, among the factors to consider in a request to modify custody are the child's adjustment to his home, school and community. The evidence presented demonstrates that J.C.B has adjusted well to her home with Father, her new school, and her return to the community since she was placed with Father by DFPS. This substantial change in factors weighs in favor of a permanent modification of custody to Father.**

**65. Another factor to consider is the child's desire to remain in Indiana. While the Court would have given this factor greater weight if J.C.B. had been at least fourteen (14) years old, this change in factors is, nonetheless, substantial and weighs in favor of a permanent modification of custody to Father.**

66. By agreeing to assume care of his daughter per the DFPS safety plan and by pursing modification of custody as he agreed to, Father has demonstrated a permanent change in his desire for physical custody of J.C.B.

67. Mother argues that Father has not demonstrated a pattern of domestic or family violence as contemplated by I.C. 31-17-2-8, but has merely shown a single act of abuse. The Court is mindful that a non-custodial parent must show more than isolated acts of misconduct by the custodial parent in order to warrant a modification of child custody.

68. The Court also agrees with Mother that Indiana law recognizes a parental privilege to use moderate or reasonable physical force in the discipline of a child. **However, the evidence**

**presented leads to the conclusion that Mother has used a belt in the past to discipline J.C.B., albeit as a last resort. The evidence also leads to the conclusion that in the latest instance, the discipline resulted in multiple bruising to the child's body and that this discipline was unreasonable as a means of parental discipline. The Court concludes that a pattern of domestic or family violence has been established.**

69. Having considered the evidence, the Court concludes that while Mother implements corporal punishment with J.C.B. as she is entitled to do as a parent, she has resorted to the use of a belt for spankings. **Further, the evidence demonstrates that the punishment carried out here was excessive and exceeds any reasonable parental discipline of a child.**

70. **To return J.C.B. to Mother's custody would place the child's wellbeing at substantial risk. It would not be in the best interest of the child to return J.C.B. to the custody of Mother.**

71. There is a substantial change in one (1) or more of the factors listed in Indiana Code § 31-17-2-8 such that the current order for physical custody of the child is unreasonable.

72. It is in the in the best interest of J.C.B. that Father be granted sole physical custody with parties continuing to share joint legal custody of the minor child.

73. Father has requested that his support order be terminated and that Mother be required to pay child support.

74. The current child support order was temporarily vacated on May 23, 2017. There is no evidence of an arrearage in this case.

75. Father earns a weekly gross income of Five Hundred Twenty-Six Dollars ($526.00) which is based upon an hourly wage of Thirteen Dollars and Fifteen Cents ($13.15) over a forty (40) hour work week.

76. **Mother earns a weekly gross income of One Thousand Dollars ($1,000.00) per week.**

77. Both parties have health insurance available to them and J.C.B. Father would incur Eight Dollars ($8.00) per week on the child's portion of his weekly insurance premium. Mother would

incur a weekly premium for J.C.B. around Thirty-Five Dollars ($35.00) per week.

78. Father shall maintain health insurance coverage on J.C.B. and receive credit for the weekly premium.

79. Father incurs Fifty Dollars ($50.00) per week in work-related child care expenses.

80. Mother shall exercise liberal parenting time as the parties shall agree but in no event shall Mother be entitled to less parenting time than that provided in the Indiana Parenting Time Guidelines When Distance is a Major Factor.

81. Mother's parenting time shall not be supervised.

82. Mother shall have additional parenting time, including overnight parenting time, whenever she travels to Marion County, Indiana or its contiguous counties. The parties shall provide notice to each other, as far in advance as possible, of such parenting opportunities.

83. Mother shall be entitled to reasonable weekly opportunities for additional contact with the minor child through telephone calls, texting, and video conferencing such as through Facetime or Skype.

**84. The existing child support order shall be modified. Mother shall pay child support in the amount of One Hundred Sixty-Two Dollars ($162.00) per week consistent with the attached Child Support Obligation Worksheet, which is incorporated herein by reference.**

* * *

88. The Court recommends, but does not order, that Mother undertake parenting classes with emphasis on proper child discipline.

Appellant's App. pp. 13–23 (citations omitted) (emphasis added). Mother now appeals.

# Standard of Review

[11] The decision to modify custody is one that rests in the sound discretion of the trial court. *In re Marriage of Sutton*, 16 N.E.3d 481, 484 (Ind. Ct. App. 2014). On appeal, we review the trial court's decision to modify custody for an abuse of this discretion, giving wide latitude and deference to the trial court. *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002).

[12] Here, the trial court entered findings of fact and conclusions *sua sponte*. In such cases, the trial court's specific findings control only with respect to the issues they cover, and a general judgment standard applies to issues outside the court's findings. *Sutton*, 16 N.E.3d at 484–85. The trial court's findings or judgment will be set aside only if they are clearly erroneous. *Id*. A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id*. On appeal, we "are not to reweigh the evidence nor reassess witness credibility, and the evidence should be viewed most favorably to the judgment." *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011).

## I. Custody Modification

[13] Mother first argues that the trial court abused its discretion by granting Father's petition to modify custody. Pursuant to Indiana Code section 31-17-2-21, a trial court may not modify an existing custody order unless: (1) the modification is in the best interests of the child, and (2) there has been a substantial change in one or more of the statutory factors set forth in Indiana Code section 31-17-2-8. The factors a trial court is to consider under Section 31-17-2-8 are:

(1)  The age and sex of the child.

(2)  The wishes of the child's parent or parents.

(3)  The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4)  The interaction and interrelationship of the child with:

(A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5)  The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6)  The mental and physical health of all individuals involved.

(7)  Evidence of a pattern of domestic or family violence by either parent.

(8)  Evidence that the child has been cared for by a de facto custodian. . . .

[14]  All that is required to support custody modification under Section 31-17-2-21 is a finding by the trial court that (1) change would be in the child's best interests, (2) a consideration of the factors listed above, and (3) a finding that there has been a substantial change in one of those factors. *In re Paternity of P.R.*, 940 N.E.2d 346, 351 (Ind. Ct. App. 2010).

*A. Pattern of Domestic or Family Violence*

Mother first argues that the trial court erred in determining that there was evidence of a pattern of domestic or family violence. Mother notes that we have held before that a non-custodial parent "must show something more than isolated acts of misconduct by the custodial parent to warrant a modification of child custody." *Wallin v. Wallin*, 668 N.E.2d 259, 261 (Ind. Ct. App. 1996). Here, however, there was evidence of more than an isolated act of misconduct. There was evidence that Mother repeatedly beat J.C.B. with a belt or a switch; the incident that led to the DFPS investigation was only the most recent of Mother's beatings. Indeed, Mother herself admitted that she had previously whipped J.C.B. with a belt three times while they lived in Texas.

We find Mother's citation to *Willis v. State*, 888 N.E.2d 177 (Ind. 2008), to be unavailing. In that case, a mother was convicted of Class D felony battery for whipping her eleven-year-old son with a belt or extension cord. *Id.* at 179. Our supreme court noted the existence of a parental privilege "to apply such reasonable force or to impose such reasonable confinement upon his child as he reasonably believes to be necessary for its proper control, training, or education" as a complete defense to a charge of battery. *Id.* at 182. The *Willis* court held that this parental privilege applied in the case before it, noting that the boy's injuries caused by the mother's whipping "were neither serious nor permanent," and that the mother in that case could not be guilty of battery. *Id.* at 184.

[17] Here, however, we are not concerned with criminal liability or even tort liability. We are concerned with whether there was a pattern of family or domestic violence sufficient to justify a change in custody. Although the parental privilege from *Willis* might be a defense for Mother if she were to be criminally charged in Indiana, we do not think this privilege prevented the trial court from considering Mother's violence toward her child when determining whether to modify custody in favor of Father.

[18] Mother also claims that the trial court did not find a pattern of family or domestic violence because the trial court found that there was evidence that only the most recent whipping was excessive and resulted in injuries. However, the trial court also found that Mother had repeatedly whipped J.C.B. while in Texas and that the most recent whipping resulted in injuries to the child. This is sufficient to establish that there had been a pattern of violence toward J.C.B. Accordingly, the trial court did not err in concluding that there had been a substantial change in one of the statutory factors, evidence of a pattern of family or domestic violence, sufficient to justify a change of custody to Father.

### B. Child's Adjustment to Home, School, and Community

[19] Mother next argues that the trial court erred by finding that J.C.B.'s adjustment to her new home with Father, her new school, and her return to the Indianapolis community since her placement with Father by the Texas DFPS was a substantial change in factors that weighed in favor of modification of custody to Father. Mother argues that "a Trial Court may not consider a

change in permanent physical custody upon evidence of changes in a child's condition occurring during the period in which the physical custody of that child has been transferred to the noncustodial parent pursuant to an emergency petition." Appellant's Br. at 11–12 (citing *Joe v. Lebow*, 670 N.E.2d 9, 22 (Ind. Ct. App. 1996)).

[20] In *Joe*, this court held that evidence of a child's improving condition, while under the temporary emergency custody of the noncustodial parent, was admissible. 670 N.E.2d at 23. A child's improving condition may properly be considered in determining the child's best interests. *Id*. However, evidence of a child's improving condition cannot fall within the trial court's consideration of a substantial change in one of the statutory factors. *Id*. In other words, without independent evidence of a substantial change in one of the statutory factors, evidence of a child's improving condition with the noncustodial parent will not by itself support a custody modification. *Wiggins v. Davis*, 737 N.E.2d 437, 442 (Ind. Ct. App. 2000) (citing *Joe*, 670 N.E.2d at 23).

[21] Accordingly, the trial court should not have considered J.C.B.'s adjustment to her new home and community as evidence of a substantial change in the statutory factors. But the trial court could properly consider J.C.B.'s adjustment in determining the child's best interests. We find no reversible error, however, because here, the trial court did not base its custody decision solely based on this factor. Instead, as noted above, the trial court also based its determination on the evidence of violence toward J.C.B. by Mother.

## C. The Wishes of the Child

[22] Mother also argues that the trial court erred by taking into consideration J.C.B.'s desire to remain with Father. Mother again cites to our decision in *Joe* for the proposition that "a change in the child's wishes, standing alone, cannot support a change in custody." 670 N.E.2d at 25. Here, however, the trial court did not base its decision to modify custody on the child's wishes alone. Moreover, the statute specifically authorizes the trial court to consider "all relevant factors" including "[t]he wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age." I.C. § 32-27-2-8(3). That the child's wishes are to be given more consideration if the child is at least fourteen years old does not mean that the wishes of a child who is not yet fourteen cannot be considered.

[23] In summary, the trial court did not abuse its considerable discretion in modifying physical custody of J.C.B. in favor of Father based on evidence of Mother's violence directed toward the child.

## II. Motion to Amend Testimony

[24] Lastly, Mother argues that the trial court abused its discretion by denying her post-hearing motion to amend her testimony concerning her weekly income. Generally speaking, evidence must be offered during the course of a trial, and it is within the discretion of the trial court to permit a party to present additional evidence or testimony once the party has rested, once both parties have rested, or after the close of all of the evidence. *In re D.Q.*, 745 N.E.2d 904, 908 (Ind. Ct. App. 2001).

[25]     Mother testified at the evidentiary hearing that her weekly gross income was $1,000. After the hearing, Mother realized that she had misspoken, and that her income was, in fact, closer to $1,000 per *paycheck*, which she receives every two weeks. Mother moved to amend her testimony in this regard, providing the trial court with copies of her paychecks to corroborate her claim regarding her factually erroneous testimony. *See* Appellant's App. pp. 48–54. She also provided the trial court with a calculation showing that her actual gross weekly income was $705. *See id*. at 46–47.

[26]     Father does not deny the veracity of Mother's claims regarding her actual income. He argues, however, that Mother and her counsel repeatedly misstated her income during the hearing and that the trial court was therefore within its discretion to deny Mother's motion. He also contends that Mother is not without remedy, as she may still petition the trial court to modify her child support obligation under Indiana Code section 31-16-8-1. This statute provides:

> Except as provided in section 2[2] of this chapter, modification may be made only:
>
> (1)  upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or
>
> (2)  upon a showing that:
>
>> (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from

---

[2] Section 2 of Indiana Code chapter 31-16-8, which is inapplicable here, pertains to health and hospitalization costs.

the amount that would be ordered by applying the child support guidelines; and

(B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

I.C. § 31-16-8-1.

[27] Under this statute, Mother would have to wait until August 21, 2018 (twelve months after the current support order was entered) before she could file for modification. In the meantime, her child support obligation would be substantially higher than if calculated using her actual, documented weekly salary.[3]

[28] Under these particular facts and circumstances, we conclude that the trial court abused its discretion by denying Mother's motion to reopen the evidence and submit documentary evidence of her weekly income. We therefore reverse the trial court's order regarding child support and remand with instructions that the trial court determine Mother's child support obligation based on her actual gross weekly income.

---

[3] Using the Indiana Supreme Court Child Support Calculator, and the figures used in the trial court's child support worksheet, corrected to show Mother's weekly income of $705, results in a weekly child support obligation for Mother of $89, almost half of the $162.00 obligation that Mother was ordered to pay based on her mistaken testimony. *See* Indiana Supreme Court Child Support Calculator, http://mycourts.in.gov/csc/Practitioners/.

# Conclusion

The trial court did not abuse its discretion by granting Father's motion to modify physical custody. There was evidence that Mother engaged in a pattern of violence toward J.C.B., with the most recent incident resulting in not-insubstantial injuries to the child and the involvement of Texas child protection authorities. The trial court's consideration of the child's adjustment to her new home with Father was not reversible error, and the trial court did not err by considering the wishes of J.C.B. to live with Father. We conclude, however, that the trial court should have granted Mother's motion to reopen the evidence to submit documentary evidence of her actual gross weekly income because Mother's child support obligation would be substantially less if it is based on her actual weekly gross income. Accordingly, the judgment of the trial court is affirmed with regard to child custody, reversed with regard to child support, and remanded for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

Najam, J., and Barnes, J., concur.