## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 26 2019, 8:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeffrey A. Flores
Flores Law Office
Madison, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Paternity of Brogan Hensley, | June 26, 2019 |
| Megan Orcutt, | Court of Appeals Case No. 18A-JP-2758 |
| *Appellant-Respondent,* | Appeal from the Dearborn Circuit Court |
| v. | The Honorable James D. Humphrey, Judge The Honorable Kimberly A. Schmaltz, Magistrate |
| John Hensley, | |
| *Appellee-Petitioner.* | Trial Court Cause No. 15C01-1507-JP-55 |

**Kirsch, Judge.**

[1] Megan Orcutt ("Mother") appeals the trial court's order granting a petition filed by John Hensley ("Father") to modify custody of the parties' minor child,

Brogan Hensley ("Child") raising the following restated issue for our review: whether the trial court abused its discretion when it granted Father's petition to modify custody.

[2] We vacate and remand with instructions.

## Facts and Procedural History

[3] Mother and Father have one child together, Child, who was born on September 13, 2012. *Appellant's App. Vol. 2* at 10. In an order issued on April 6, 2016, paternity was established and child support, parenting time, and child custody were also ordered. *Id*. at 22-25. Pursuant to this order, Mother was given primary legal and physical custody of Child. *Id*. at 22. Father was given parenting time on alternating weekends from Friday at 6:00 p.m. to Sunday at 6:00 p.m., and every Wednesday from 4:00 p.m. to 7:30 p.m. *Id*. Due to conflict between the parties, the provisions of the Indiana Parenting Time Guidelines ("IPTG") regarding the right of first refusal did not apply. *Id*. The parties were ordered to communicate only through a communication notebook, until Father completed an anger management course. *Id*. at 23-24. Parenting time exchanges were to take place at the Aurora police station. *Id*. at 23. At the time of the original custody order, Mother had a protective order against Father under cause number 15C01-1508-PO-108. *Id*. at 31. The trial court kept the protective order in place but modified it to be consistent with the terms of the custody order. *Id*. at 23.

[4]     On April 7, 2017, Father filed a "Verified Emergency Petition to Modify Custody, Parenting Time and Child Support." *Id*. at 5. After evidentiary hearings were held, the trial court issued an order on May 25, 2017, granting Father temporary custody of Child. *Id*. at 14. In the temporary custody order, the trial court found that circumstances had substantially changed, making the original custody order unreasonable and not in Child's best interests because the Department of Child Services ("DCS") had substantiated neglect against Mother and had entered an Informal Adjustment in cause number 15C01-1703-JC-029. *Id*. at 14-15.

[5]     The trial court found that Mother had been in many fights with her live-in boyfriend, Phillip Clark ("Clark"), while they were drunk and that the police had responded to the home. *Id*. at 15. Mother admitted that Clark had a drug problem, and on a follow-up visit, DCS smelled marijuana when Child was present in Mother's home. *Id*. at 16. Mother also had two homeless individuals living with her, and one was a drug user. *Id*. Mother left Child home alone while taking her daughter to school. *Id*. at 17. Mother admitted she had installed a deadbolt to keep Child from leaving his room and had locked Child in his room numerous times. *Id*. Mother had removed the deadbolt before DCS's initial visit because she realized it "sounded bad." *Id*. Mother had difficulty disciplining Child, and prior to DCS involvement, Child was out of control and would hit Mother after Mother spanked him. *Id*. at 18. Child had tooth enamel problems, but Mother did not take him to the dentist from August 9, 2015 to March 7, 2017. *Id*. at 19.

[6] At the time of the temporary custody order, DCS had no concerns with Father having custody of Child. *Id*. at 20. The trial court ordered that neither party was to allow any contact between Child and Clark. *Id*. At that time, Mother's relationship with Clark had ended, and he no longer lived in Mother's home. *Id*. at 21. Both parties were prohibited from drinking alcohol or using illicit substances when Child was in their care. *Id*. Mother was granted parenting time per the IPTG. *Id*. at 20.

[7] On May 15, 2018, Mother filed a motion for a final hearing on custody modification. *Id*. at 6. The trial court held an evidentiary hearing on September 21, 2018. *Id*. at 10. In its final order on modification of child custody and child support issued on October 21, 2018, the trial court made its temporary custody order permanent, modified custody of Child in favor of Father, and incorporated the findings contained in the temporary custody order into the final order. *Id*. The trial court awarded Father sole legal and physical custody of Child and granted Mother parenting time in accordance with the IPTG. *Id*. at 10-11. At the time of the temporary custody hearing, Child was four years old, and at the final hearing, he was six years old. *Tr*. at 8-9. Mother now appeals.

# Discussion and Decision

[8] Mother asserts that the trial court abused its discretion in granting Father's petition for custody modification and awarding sole legal and physical custody of Child to Father. We review custody modifications for an abuse of discretion

"with a preference for granting latitude and deference to our trial judges in family law matters." *In re the Paternity of C.S.*, 964 N.E.2d 879, 883 (Ind. Ct. App. 2012), *trans. denied*. This is because the trial court is able to observe the parties' conduct and demeanor and hears their testimonies. *Id.* We will not reweigh the evidence or judge the credibility of witnesses and will reverse the trial court's custody determination based only upon a trial court's abuse of discretion that is "clearly against the logic and effect of the facts and circumstances or the reasonable inferences drawn therefrom ." *Id*. "[I]t is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by the appellant before there is a basis for reversal." *Id*.

[9] Father did not file an appellee's brief. When an appellee fails to submit a brief on appeal, we apply a less stringent standard of review with respect to the showing necessary to establish reversible error. *In re Paternity of S.C.*, 966 N.E.2d 143, 148 (Ind. Ct. App. 2012), *trans. denied*. We may reverse if the appellant establishes prima facie error, which is an error at first sight, on first appearance, or on the face of it. *Riggen v. Riggen*, 71 N.E.3d 420, 422 (Ind. Ct. App. 2017). Moreover, we will not undertake the burden of developing legal arguments on the appellee's behalf. *Id*.

[10] Mother argues that the trial court abused its discretion when it modified custody of Child in favor of Father and awarded Father sole legal and physical custody. Specifically, Mother contends that the trial court did not expressly indicate which statutory factors regarding custody had substantially changed

and did not explain why a change in custody is in the best interests of Child. She asserts that the trial court's previous grant of temporary change of custody to Father was not sufficient to warrant a permanent custody modification and that evidence was presented that the circumstances that supported the temporary change of custody had been remedied at the time of the final hearing. Mother further maintains that, although it was permissible for the trial court to consider the temporary custody order in its determination of the custody modification, it is only a part of the consideration of whether modification is in the best interests of a child, and Father presented no evidence to support a finding that custody modification in favor of Father was in Child's best interests.

[11]     Here, the trial court entered findings and conclusions sua sponte. When the trial court enters findings sua sponte, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. *Montgomery v. Montgomery*, 59 N.E.3d 343, 349 (Ind. Ct. App. 2016), *trans. denied*. The specific findings will not be set aside unless they are clearly erroneous. *Collyear-Bell v. Bell*, 105 N.E.3d 176, 184 (Ind. Ct. App. 2018). A finding is clearly erroneous when there are no facts or inferences drawn therefrom that support it. *Id*. In reviewing the trial court's findings, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id*.

[12]     Pursuant to Indiana Code section 31-17-2-21, a trial court may not modify an existing custody order unless: (1) the modification is in the best interests of the

child; and (2) there has been a substantial change in one or more of the statutory factors set forth in Indiana Code section 31-17-2-8. The factors a trial court is to consider under section 31-17-2-8 are:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian. . . .

To support a modification of custody under Indiana Code section 31-17-2-21, the trial court must find that (1) the change would be in the child's best interests, (2) it considered the factors listed above, and (3) there has been a substantial change in one of those factors. *Collyear-Bell*, 105 N.E.3d at 184.

[13] In the present case, the trial court's findings in its order modifying custody are insufficient to support a modification of custody. In the order, the trial court simply stated, "Modification of custody is in the best interest of the child. Father shall have sole legal and physical custody of the minor child." *Appellant's App. Vol. 2* at 11. It then went on to list the statutory factors it considered in making that determination. However, the trial court made no explicit finding that there had been a substantial change in one of the statutory factors under Indiana Code section 31-17-2-8 that warranted a modification of custody. *Id*. at 10-12.

[14] In order to support a modification of custody, the trial court is required to make "a finding that a change would be in the child's best interests," to consider "the factors listed in [Indiana Code section 31-17-2-8], and [to make] a finding that there has been a substantial change in one of those factors." *Nienaber v. Nienaber*, 787 N.E.2d 450, 456 (Ind. Ct. App. 2003). Indiana courts have

interpreted the language of the statute to require the trial court to find there has been a substantial change in one or more of the statutory factors. *Kanach v. Rogers*, 742 N.E.2d 987, 989 (Ind. Ct. App. 2001). The court must "consider" the statutory factors and find there has been a substantial change. *Id.*

[15] Here, nowhere in the trial court's order was there a finding that there had been a substantial change in any of the factors set out in Indiana Code section 31-17-2-8. Based on our less stringent standard of review due to Father's failure to file an appellee's brief, we conclude that Mother has shown prima facie error. The trial court abused its discretion when it modified custody in favor of Father.[1] We, therefore, vacate the trial court's order and remand for further findings.

[16] Vacated and remanded with instructions.

Vaidik, C.J., and Altice, J., concur.

---

[1] Mother also raises an issue contending that the parties effected a de facto modification of Mother's parenting time because an exhibit that she presented at the evidentiary hearing showed that Mother signed Child into school all but five days during a seven-month period. *Appellant's Br.* at 21 (citing *Ex. Vol.* at 13). However, although the cited exhibit does show that Mother signed Child into school thirty-four times in the seven-month period reflected in the exhibit, this is not enough to extrapolate that she had Child an additional ninety-six nights per year and that the trial court erred in giving Mother credit for only ninety-eight overnights.