# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Nov 15 2019, 9:11 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Frederick A. Turner
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of: E.W. and I.W. (Minor Children), Children in Need of Services, | November 15, 2019 |
| and | Court of Appeals Case No. 19A-JC-1495 |
| C.A. (Mother), | Appeal from the Monroe Circuit Court |
| *Appellant-Respondent,* | The Honorable Holly M. Harvey, Judge |
| v. | Trial Court Cause Nos. 53C06-1807-JC-525 53C06-1807-JC-526 |
| Indiana Department of Child Services, | |
| *Appellee-Petitioner* | |

**Baker, Judge.**

[1] C.A. (Mother) appeals the order finding her minor children, E.W. and I.W., to be children in need of services (CHINS), arguing that the evidence is insufficient to establish that the coercive intervention of the court is necessary. Mother also appeals the order granting physical custody of E.W. to his father, arguing that the juvenile court made erroneous findings of fact and that the evidence does not support a conclusion that a custody modification is in E.W.'s best interests. Finding the evidence sufficient and no reversible error with respect to custody, we affirm.

## Facts

[2] I.W.[1] was born in January 2009 to Mother and L.M. ("I.W.'s Father"), and E.W. was born in August 2011 to Mother and J.R. ("E.W.'s Father"). Mother has prior history with the Department of Child Services (DCS), including a termination of parental rights to two other children in 2007 and a CHINS case with I.W. in 2009. Mother shared custody of the children with their respective fathers. Mother lived in Bloomington, I.W.'s Father lived in Texas, and E.W.'s Father lived in Indianapolis.

[3] On July 5, 2018, Mother was arrested for domestic battery, criminal recklessness, and attempted battery with a deadly weapon; the victim of the alleged violence was her husband (Husband), who is not the father of either

---

[1] The juvenile court entered an order on September 13, 2018, changing I.W.'s name to I.W.M., but for the sake of clarity, we will refer to the child as I.W. throughout this opinion.

child. The children were present while she allegedly committed these crimes—indeed, Mother allegedly hit I.W. in the face multiple times and threatened Husband and the children with a knife. Mother later admitted that she had consumed twenty double shots of liquor before she was arrested, that she had an alcohol abuse problem, and that she had untreated mental health issues. While in jail, Mother made suicidal statements. The children have observed Mother impaired and/or unstable on multiple occasions. Husband reported that Mother has a long history of domestic violence against both him and the children, alcohol and drug abuse issues, and untreated mental health problems.

[4] DCS filed a petition alleging that the children were CHINS on July 9, 2018. At the initial hearing, held that same day, the juvenile court ordered the children removed from Mother's care and custody and that both would be placed with E.W.'s Father in Indianapolis. After E.W.'s Father reported stress in the home between his girlfriend and I.W., the juvenile court moved I.W. into foster care on November 5, 2018.

[5] The juvenile court held a factfinding hearing on the CHINS petition on November 28, 2018. The only witness to testify at the factfinding hearing was the DCS Family Case Manager (FCM) who investigated the initial allegations. On December 3, 2018, the juvenile court found the children to be CHINS, emphasizing the alleged crimes Mother committed in front of the children, her extreme alcohol consumption, her suicidal statements, and her previous involvements with DCS. The juvenile court also found as follows:

Although the Fathers of the Children intend to seek legal and physical custody of the children, they currently have not done so in this case. Without a custody order limiting Mother's contact for the protection of the children, a CHINS case is needed for that purpose. Therefore the coercive intervention of the court is needed to ensure the safety of the children.

Appealed Order p. 2.

Subsequently, both fathers filed motions to modify custody. The juvenile court held a dispositional hearing on January 22 and February 5, 2019. The February 5 hearing also served as a custody modification hearing for E.W. At that hearing, the following evidence was introduced:

- Mother was participating in intensive outpatient therapy (IOP), recovery services, supervised therapeutic visitation, random drug screens, and therapy. She had one positive drug screen for THC in December but had tested clean since that time.
- Mother found housing in a shelter and had stable employment. She was on a waiting list for an apartment at the Coburn Place shelter.
- Mother's visits took place in the community because the visit supervisors did not feel her home was appropriate. Mother had an affectionate relationship with the children. At one visit, I.W. reported that other children in E.W.'s Father's house had been hitting him. Mother "began to escalate" and the visit was ended; during the drive home, Mother made death threats against the FCM and E.W.'s Father and had great difficulty calming down. Tr. Vol. I p. 135.
- The children were very close with each other and with Mother. Mother paid them a dollar to go to E.W.'s Father's home, cry, and say they did not want to be with him anymore.
- The children reported that E.W.'s Father had spanked them with a belt.
- The FCM had no safety concerns about E.W.'s Father or his home. E.W. was thriving in his father's care, was happy, and was getting good grades, but his behavior was worsening because he was stressed by the

legal proceedings. E.W.'s Father has stable employment and his girlfriend provided childcare when he was at work. He reported that Mother had repeatedly threatened him, come to his house uninvited, and said she would blow up the house with the kids inside of it.

- Husband testified about Mother's alcohol abuse and violence. After his testimony, while the court and counsel were discussing scheduling matters, Mother said, "I did not try to kill the dude. You can whisper a little bit more quieter." The court said, "Hey, button it," but Mother kept arguing, "he's just trying to kill my son" and "he over there whispering." *Id.* at 126.

- At another point in the hearing, while the court and counsel were discussing scheduling matters, Mother said, "Okay, I'm sorry. I'm not trying to be rude or nothing . . . but, my child is in an abusive home and I cannot sleep. I cannot go another month without eating and worrying about my child being abused." *Id.* at 151. She continued to interject and speak out of turn.

- Mother admitted that she was an alcoholic and has borderline personality disorder.

[7] On March 28, 2019, the juvenile court entered two orders: (1) the first order granted custody of E.W. to his father and discharged the CHINS finding as to E.W.; and (2) the second order was a dispositional order. In the custody order, the juvenile court found as follows:

> 2.   Mother has inconsistently participated in the recommended referrals of the DCS. Mother is participating in IOP, though has not been consistent in attendance. Her drug screen had been consistently positive for marijuana until November of 2018, and Mother had one other positive screen in December while the remaining screens available to the date of the Predispositional Report were negative. She only recently obtained an AA sponsor. . . . She reported being on track to graduate IOP by the end of February. Mother is visiting with the children regularly. She resides in Julian Center,

and is on the wait list for a family shelter. She has maintained employment.

3. At the time of the dispositional hearing, the circumstances giving rise to the filing of the Petition and the finding of CHINS had not been remedied, and Mother is not yet capable of having [E.W.] returned to her care and custody.

***

5. [E.W.] is doing well since being placed in the custody of his Father. . . . The DCS has not expressed any concerns about [E.W.'s] safety while in Father's care.

6. Father has demonstrated an ability to care for [E.W.]. He has regular employment. Father has stable housing where he lives with his partner of approximately ten years . . . . [E.W.] is bonded to [Father's girlfriend] and gets along well with his three step-siblings, [girlfriend's] children. . . .

7. Mother's incarceration and failure to remedy the circumstances giving rise to the removal of the children from her home by maintaining stable housing and inconsistently maintaining sobriety represent a substantial and continuing change in circumstances which support a modification of custody. It is in the best interests of the child that Father have physical custody of [E.W.]

***

1. [E.W.'s Father] shall have physical custody of [E.W.] and the parties shall continue to share joint legal custody.

> 2.    [Mother] shall have parenting time with the children at
>        times and locations as agreed by the parties. . . . [Mother]
>        shall have no unsupervised parenting time.

Appellant's App. Vol. II p. 38-40. The dispositional order required Mother to participate with IOP and other recovery services, to participate in weekly therapy and home-based case management, to refrain from using drugs and alcohol, and to submit to random drug screens. I.W. remained in foster care. Mother now appeals the finding that I.W. is a CHINS and the order granting physical custody of E.W. to his father.

# Discussion and Decision

## I.  CHINS Finding

[8]    Our Supreme Court has explained the nature of a CHINS proceeding and appellate review of a CHINS finding as follows:

> A CHINS proceeding is a civil action; thus, "the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code." *In re N.E.,* 919 N.E.2d 102, 105 (Ind. 2010). We neither reweigh the evidence nor judge the credibility of the witnesses. *Egly v. Blackford County Dep't of Pub. Welfare,* 592 N.E.2d 1232, 1235 (Ind. 1992). We consider only the evidence that supports the trial court's decision and reasonable inferences drawn therefrom. *Id.* We reverse only upon a showing that the decision of the trial court was clearly erroneous. *Id.*
>
> There are three elements DCS must prove for a juvenile court to adjudicate a child a CHINS. DCS must first prove the child is under the age of eighteen; DCS must prove one of eleven

different statutory circumstances exist that would make the child a CHINS; and finally, in all cases, DCS must prove the child needs care, treatment, or rehabilitation that he or she is not receiving and that he or she is unlikely to be provided or accepted without the coercive intervention of the court. *In re N.E.,* 919 N.E.2d at 105.

*In re K.D.,* 962 N.E.2d 1249, 1253-54 (Ind. 2012) (footnote omitted).

[9] Here, DCS alleged that I.W. was a CHINS pursuant to Indiana Code section 31-34-1-1, which provides as follows:

A child is a child in need of services if before the child becomes eighteen (18) years of age:

(1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision:

(A) when the parent, guardian, or custodian is financially able to do so; or

(B) due to the failure, refusal, or inability of the parent, guardian, or custodian to seek financial or other reasonable means to do so; and

(2) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

Our Supreme Court has interpreted this provision to require "three basic elements:  that the parent's actions or inactions have seriously endangered the child, that the child's needs are unmet, and (perhaps most critically) that those needs are unlikely to be met without State coercion." *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014).

[10]  Mother's only argument related to I.W.'s CHINS status is that the evidence is insufficient to show that he needs care, treatment, or rehabilitation that is unlikely to be provided or accepted without the coercive intervention of the court.  The record reveals that Mother's parental rights to two other children were terminated in 2007 and that she had a previous CHINS case with I.W. in 2009.  Despite these experiences, Mother continued to drink excessively and behave violently, resulting in her arrest on serious criminal charges.  After her arrest, she expressed suicidal thoughts; after the children were removed, she continued to drink alcohol.  There was also evidence gathered by the investigating FCM that the children had both witnessed and experienced domestic violence at her hands repeatedly over the years.

[11]  The purpose of a CHINS case is "to help families in crisis—to protect children, not punish parents." *Id.* at 1285.  In this case, the evidence shows that I.W. needed protection and Mother needed help.  I.W. was seriously endangered in Mother's care and custody and, until DCS and the juvenile court got involved with this family, Mother was not attempting to address her serious substance abuse and mental health issues.  Under these circumstances, we find that the

evidence supports the juvenile court's conclusion that the coercive intervention of the court was necessary to ensure I.W.'s safety and well-being.

# II. Custody of E.W.

[12] Next, Mother argues that the juvenile court erroneously awarded physical custody of E.W. to his father. In its order, the juvenile court entered findings of fact and conclusions of law. In reviewing the order, we first determine whether the evidence supports the findings; and second, whether the findings support the judgment. *Harris v. Harris*, 800 N.E.2d 930, 934-35 (Ind. Ct. App. 2003). We owe no deference to the juvenile court's conclusions of law and will review those conclusions de novo. *Id.* at 935. We do, however, give "wide latitude and deference" to a juvenile court's decision to modify custody. *Collyear-Bell v. Bell*, 105 N.E.3d 176, 183 (Ind. Ct. App. 2018).

[13] Indiana Code section 31-17-2-21(a) provides that a court may not modify a child custody order unless (1) the modification is in the child's best interests; and (2) there is a substantial change in one or more of the factors enumerated in Indiana Code section 31-17-2-8. That statute, in turn, provides in relevant part as follows:

> The court shall determine custody and enter a custody order in accordance with the best interests of the child. In determining the best interests of the child, there is no presumption favoring either parent. The court shall consider all relevant factors, including the following:
>
> (1) The age and sex of the child.

(2)      The wishes of the child's parent or parents.

(3)      The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4)      The interaction and interrelationship of the child with:

         (A)      the child's parent or parents;

         (B)      the child's sibling; and

         (C)      any other person who may significantly affect the child's best interests.

(5)      The child's adjustment to the child's:

         (A)      home;

         (B)      school; and

         (C)      community.

(6)      The mental and physical health of all individuals involved.

(7)      Evidence of a pattern of domestic or family violence by either parent.

I.C. § 31-17-2-8.

# A. Factual Findings

[14]      Mother first argues that the juvenile court made factual findings that are not supported by the evidence. First, the court found that "Mother inconsistently participated in the recommended referrals of the DCS." Appellant's App. Vol. II p. 38. We agree with Mother that the evidence does not support this finding.

The record shows that Mother was participating with IOP, recovery services, visitation, random drug screens, individual therapy, and home-based case management. The State contends that the evidence shows that Mother had not yet sufficiently *benefited* from those services. That may be the case, but that is not what the juvenile court found. While we conclude that this finding is erroneous, that conclusion does not alter the result of this appeal.

[15] Second, the court found that "[t]he DCS has not expressed any concerns about [E.W.'s] safety while in Father's care." *Id.* at 39. The FCM testified that the children reported that E.W.'s Father had struck them with a belt approximately five times, and the FCM then told E.W.'s Father that he needed to change the way he disciplined E.W.; Father agreed to make the change. While this was, indeed, an issue that had to be corrected, the FCM did not state that he had ongoing concerns about E.W.'s safety while in Father's care. Likewise, while the FCM noted that the amount of food in the house was "appropriate, but . . . it could have been more," tr. vol. I p. 86, he did not conclude that the issue rose to the level of a safety concern. Therefore, the evidence supports this finding.

[16] Third, the court found that "Mother's incarceration and failure to remedy the circumstances giving rise to the removal of the children from her home by maintaining stable housing and inconsistently maintaining sobriety represent a substantial and continuing change in circumstances which support a modification of custody." Appellant's App. Vol. II p. 40. Mother argues that her "conduct has been remedied" and that her inability to get housing is a result of the CHINS case. Appellant's Br. p. 15. The record shows that Mother has

absolutely made commendable progress and has had consistent and sincere participation with her court-ordered services. But it does not show that the underlying issues have been remedied; instead, it shows that there is more work to be done before either child can be placed safely into Mother's unsupervised care and custody. Therefore, the evidence supports the factual portions of this finding.

## B. Best Interests

[17] Finally, Mother argues that the juvenile court erred by finding that it is in E.W.'s best interests for his father to have primary physical custody. When reviewing a child's best interests, the juvenile court must consider the factors enumerated above in Indiana Code section 31-17-2-8.

[18] The evidence shows that E.W. has an affectionate relationship with Mother and a good relationship with his father. He is well adjusted to his father's home and the school that he attends while living there. E.W. is bonded to Father's girlfriend and her children. He is also bonded to I.W., and while it is unfortunate that the brothers have to be separated for now, E.W.'s Father and his girlfriend are committed to ensuring that the siblings can visit each other and maintain a relationship.

[19] The record reveals that, while Mother is participating with all required services, she has not yet reached a point where E.W. is safe in her care. There is evidence of a pattern of domestic and family violence at her hands. There is also evidence of a serious substance abuse issue and mental health concerns that

will need continued treatment before E.W. can be placed safely in her care and custody.

[20] Under these circumstances, the evidence supports the juvenile court's conclusion that, for now, it is in E.W.'s best interests that custody be modified. Mother's arguments to the contrary amount to a request that we reweigh the evidence and second-guess the juvenile court's assessment of witnesses, which we may not do. In the future, if Mother addresses her issues to a point at which she would be a safe and stable placement for E.W., the parties and the court can, of course, reconsider the custody arrangement.

[21] The judgment of the juvenile court is affirmed.

Kirsch, J., and Crone, J., concur.