## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 12 2019, 8:06 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Justin T. Bowen
Kathleen M. Meek
Romy N. Elswerky
Bowen & Associates, LLC
Carmel, Indiana

ATTORNEY FOR APPELLEE

Jeffrey A. Flores
Madison, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Stephanie L. Jones, | September 12, 2019 |
| *Appellant-Petitioner,* | Court of Appeals Case No. 19A-JP-91 |
| v. | Appeal from the Switzerland Circuit Court |
| Jed D. McAlister, | The Honorable Jeffrey L. Sharp, Special Judge |
| *Appellee-Respondent.* | Trial Court Cause No. 78C01-1201-JP-2 |

**Mathias, Judge.**

[1] Stephanie L. Jones ("Mother") appeals the Switzerland Circuit Court's order modifying custody and child support for her minor child, C.M. Mother argues

that the trial court abused its discretion when it ordered the parties to share parenting time equally and erred when it calculated the parties' respective child support obligations.

[2] We affirm in part, reverse in part, and remand with instructions to recalculate the parties' respective child support obligations.

## Facts and Procedural History

[3] Mother and Jed McAlister ("Father") are the parents of seven-year-old C.M. In these paternity proceedings, the parties initially agreed that Mother would have physical custody of C.M., and Mother has been C.M.'s primary caretaker. Both parties each have one other child, and Father's five-year-old child attends the same daycare as C.M.

[4] On motion of the parties, parenting time and child support have been modified periodically in the past seven years. In 2014, in response to Father's motion, the trial court issued a new parenting time order awarding Father parenting time with three-year-old C.M. every Tuesday from 4:00 p.m. to 8:00 p.m. and Friday from 4:00 p.m. to Saturday at 6:00 p.m. Every other week, Father's parenting time was Friday from 4:00 p.m. to Sunday at 6:00 p.m. As a result of the order, Mother never had a full weekend of parenting time with C.M.

[5] Mother is employed in the medical field, and her work schedule has fluctuated significantly since 2014. When his schedule permits, Father has opted to care for C.M. in lieu of sending her to a childcare facility during Mother's working

hours. As a result, he has enjoyed significantly more parenting time than the time awarded in the 2014 order.

[6] Mother typically took C.M. to school or daycare in the mornings, and after school, C.M. went to daycare. In January 2018, Mother's work schedule changed. As a result, Father, or his wife, generally picked up C.M. from daycare. Mother then picked up C.M. from Father's house at approximately 6:00 p.m. Father also exercised additional overnight parenting time at Mother's request due to her work schedule or at Father's request due to a special activity.

[7] On September 4, 2018, Father filed a petition to modify parenting time due to substantial changes in the parties' work schedules and his desire to have more parenting time with C.M. He effectively requested shared physical custody because he asked for seven overnights every two weeks. A hearing was held on Father's petition on November 8, 2018. At the hearing, Mother also expressed her desire to have the parenting time order modified because the 2014 order does not allow her to have any full weekends of parenting time with C.M.

[8] On December 14, 2018, the trial court issued its order modifying parenting time and child support. The court observed that the parties have never followed the custody order. Further, the court found:

> 10. . . . While Father does exercise his parenting time every weekend, he has had a significant amount of additional time because of Mother's work schedule as a nurse. It has widely fluctuated over the years, based on the shift she is assigned.

11. Since 2014, Mother's work schedule has fluctuated significantly. From March 2016 until February of 2018, Mother was dropping [C.M.] off at [Father's] at 5:15 A.M., and picking her up at 9:00 P.M. [Father] willingly accommodated Mother's schedule, as he appreciated the extra time. Sometimes [C.M.] would stay the night, because she could get more rest.

12. Mother has at least an hour commute to work. At the time of the hearing, she was about to begin a new job, still in Edgewood, KY. She will be working five days per week, from 8 A.M. to 5 P.M. To allow for the commute, she would need to leave Vevay no later than 7:00 A.M. and would return by 6 PM. If [Father] were not allowed to continue picking up [C.M.], this would leave her in daycare an additional 2.5 to 3hrs five nights per week.

13. Father works about ten minutes from home. His schedule is 7 AM to 3:30 P.M.

***

17. When Father picks up [R.M.] from day care, he picks up [C.M.] too. Father says it's what he wants to do, and can't imagine leaving [C.M.] there because she would feel excluded. Upon arriving home, he does homework with [C.M.], makes dinner and enjoys family time.

18. When it's not [Father] himself picking up [C.M.] from daycare, it[']s either his wife, or his mother Darla . . . . When Darla picks them up, [Father] will usually let [C.M.] stay at her Grandma Darla's for an hour or so, because she get[s] quality time with her, as well as her cousin. Mother will typically pick [C.M. up] from [Father's] around 6:30.

19. The Court [f]inds that it is in the best interests of the child that the parties share physical custody.

20. [Father], or Grandma Darla should be allowed to continue picking up [C.M.] from daycare. However if the pick-up occurs on Mother's night[,] [Father] or Grandma must notify Mother in advance[.] [I]f unable to provide adequate notification then the child shall remain at daycare and Mother will pick her up.

Appellant's App. pp. 14-15.

[9] The court then ordered the parties to agree on how to evenly split the time by alternating weeks or splitting the week. In the event the parties could not agree, the court ordered them to split the week. Each party was also awarded one full week during the summer for family vacation. The parties agreed to maintain shared legal custody. As a result of the new custody arrangement, Father's child support obligation was modified to $31 per week. The court also ordered Father to pay "the controlled expenses" and daycare costs. *Id*. at 15. Mother now appeals.

## Standard of Review

[10] In this case, neither party requested findings pursuant to Indiana Trial Rule 52(A). In its custody modification order, the trial court issued findings and conclusions of law sua sponte. The trial court's specific findings control only with respect to the issues they cover, and a general judgment standard applies to issues outside the trial court's findings. *Collyear-Bell v. Bell*, 105 N.E.3d 176, 183–84 (Ind. Ct. App. 2018). The trial court's findings or judgment will be set

aside only if they are clearly erroneous. *Id.* at 184. A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id.* On appeal, we neither reweigh the evidence nor reassess witness credibility, and the evidence should be viewed most favorably to the judgment. *Id.*

# Discussion and Decision

## I. Unpleaded Issues

First, we address Mother's argument that the trial court erred when it modified custody and child support because the issues were not raised in Father's petition to modify parenting time. Indiana Trial Rule 15(B) provides that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." In discussing how unpleaded issues impact litigation, we have previously stated:

> The function of the issues, whether formed by the pleadings, pre-trial orders, or contentions of the parties, is to provide a guide for the parties and the court as they proceed through trial. Either party may demand strict adherence to the issues raised before trial. If the trial court allows introduction of an issue not raised before trial, an objecting party may seek a reasonable continuance in order to prepare to litigate the new issue. However, where the trial ends without objection to the new issue, the evidence actually presented at trial controls. Consequently, neither pleadings, pre-trial orders, nor theories proposed by the parties should frustrate the trier of fact from finding the facts that a preponderance of the evidence permits.

> Because fairness compels certain restraints, however, there are limits upon the principle of amending pleadings through implied consent. For example, a party is entitled to some form of notice that an issue that was not pleaded is before the court. Notice can be overt, as where the unpleaded issue is expressly raised prior to or sometime during the trial but before the close of the evidence, or implied, as where the evidence presented at trial is such that a reasonably competent attorney would have recognized that the unpleaded issue was being litigated.

*In re V.C.*, 867 N.E.2d 167, 178 (Ind. Ct. App. 2007) (citations omitted).

[12]　Father's petition for modification of parenting time effectively requested shared physical custody because he asked for seven overnights in each two-week period. Appellant's App. pp. 41–42. At the modification hearing, the trial court characterized the proceeding as a modification of "parenting time and/or custody." Tr. p. 3. Mother did not object to that characterization. And throughout his closing argument, Father referred to the proceeding as a custody modification. Tr. pp. 69–73. Again, Mother did not object to Father's characterization of the proceedings as a request for custody modification during her closing argument or in her proposed order.

[13]　Concerning child support, the parties and the trial court discussed how changes in parenting time, Mother's income, insurance and childcare costs would affect the support obligation. The parties agreed to submit income verification to the trial court. Tr. pp. 77–78. Also, Mother and Father submitted child support calculation worksheets with their proposed orders.

[14] For all of these reasons, we conclude that modification of child custody and support were tried with Mother's express, or at the very least implied, consent.

## II. Modification of Custody

[15] "A child custody determination is very fact-sensitive." *Steele-Giri v. Steele*, 51 N.E.3d 119, 125 (Ind. 2016). Importantly, as an appellate court, we must give deference to the trial court, especially in matters regarding child custody. Indeed, we "are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence." *Jarrell v. Jarrell*, 5 N.E.3d 1186, 1190 (Ind. Ct. App. 2014) (quoting *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002)), *trans. denied*.

[16] In a paternity proceeding, the trial court "may not modify a child custody order unless: (1) modification is in the best interests of the child; and (2) there is a substantial change in one or more of the factors that the court may consider under" Indiana Code section 31-14-13-2. *See* Ind. Code § 31-14-13-6. These factors are:

> (1) The age and sex of the child.
>
> (2) The wishes of the child's parents.
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
>
> (4) The interaction and interrelationship of the child with:

(A) the child's parents;

(B) the child's siblings; and

(C) any other person who may significantly affect the child's best interest.

(5) The child's adjustment to home, school, and community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

I.C. § 31-14-13-2. Because Father filed the motion to modify, he had the burden of demonstrating a substantial change in circumstances. *See Heagy v. Kean*, 864 N.E.2d 383, 388 (Ind. Ct. App. 2007), *trans. denied*.

[17] First, Mother argues that Father did not prove a substantial change in any of the section 31-14-13-2 factors. And Mother notes that the trial court did not make a finding that there was a substantial change in any of the factors.[1] Mother also argues that allowing Father to exercise additional parenting time

---

[1] However, absent a request by a party, the trial court is not required to make special findings regarding the substantial changes in the parties' circumstances when ordering a custody modification. *See In re Paternity of J.T.*, 988 N.E.2d 398, 400 (Ind. Ct. App. 2013).

because of her work schedule cannot be the sole basis for modification of custody. Appellant's Br. at 17–18.

[18]	Commendably, Mother typically allowed Father to have additional parenting time with C.M. due to her work schedule or to accommodate Father's family activities.[2] But after Father informed Mother that he wanted to modify the existing parenting time order to increase his parenting time with C.M., Mother no longer allowed Father to have additional time with C.M. Father expressed concern that C.M. was confused by the parenting time schedule and believed a more predictable schedule would benefit C.M.

[19]	C.M. was three years old when the 2014 parenting time order was issued. C.M. was seven when Father's petition to modify was filed. Since the 2014 order was entered, C.M. has started school, is involved in tumbling, and has a significant relationship with her now five-year-old half-brother. The parties live less than two miles from each other in the same school district, and spending significant time with both her Mother and Father is beneficial to C.M. Importantly, the trial court's order modifying parenting time and custody takes into consideration the increased parenting time that Father has enjoyed with C.M.

---

[2] Mother also argues that the trial court erred when it concluded that "[a]s to custody and parenting time, the parties have never followed the custody order." Appellant's App. p. 14. Mother points out that, absent special circumstances, Father generally enjoyed additional parenting time with C.M. because of her work schedule. While the record supports Mother's argument, C.M. and Father have become accustomed to and benefited from the additional parenting time. Mother allowed Father additional parenting time out of necessity, but the additional parenting time was consistent on a weekly basis and substantially more than that awarded in the 2014 order. Therefore, the trial court's finding that the parties did not follow the custody order is supported by the evidence.

since the previous order was entered in 2014. *See Rea v. Shroyer*, 797 N.E.2d 1178, 1182–83 (Ind. Ct. App. 2003).

[20]   After considering the evidence presented, we conclude that Father established a substantial change in circumstances in his wishes, C.M.'s age, and C.M.'s interaction and interrelationship with her Father and his family. Father also proved that shared physical custody was in C.M.'s best interests. The trial court's order promotes more stability for the parties and C.M., ensures she will maintain her close relationship with both Mother and Father, and minimizes the time she will spend in daycare. For all of these reasons, we affirm the trial court's order modifying its 2014 parenting time order and awarding the parties shared physical custody.[3]

### III.  *Modification of Child Support*

[21]   Mother also argues that the trial court abused its discretion when it modified Father's child support obligation. "Decisions regarding child support rest within the sound discretion of the trial court. Thus, we reverse child support determinations only if the trial court abused its discretion or made a

---

[3] The trial court allowed the parties to submit proposed orders. In her brief, Mother also argues that the trial court erred when it adopted Father's proposed order. The practice of accepting verbatim a party's proposed findings of fact "weakens our confidence as an appellate court that the findings are the result of considered judgment by the trial court." *Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 273 n.1 (Ind. 2003) (citing *Prowell v. State*, 741 N.E.2d 704, 708–09 (Ind. 2001)). However, the practice of adopting a party's proposed findings is not prohibited. *Nickels v. Nickels*, 834 N.E.2d 1091, 1096 (Ind. Ct. App. 2005). "Thus, although we by no means encourage the wholesale adoption of a party's proposed findings and conclusions, the critical inquiry is whether such findings, as adopted by the court, are clearly erroneous." *Id*. In this case, the trial court accepted many of Father's proposed findings, but it did not adopt Father's proposed findings verbatim, which demonstrates the court's deliberative process and scrutiny of the parties' proposed orders.

determination that is contrary to law." *Taylor v. Taylor*, 42 N.E.3d 981, 986 (Ind. Ct. App. 2015) (quotation omitted), *trans. denied*.

[22] First, we address Mother's argument that the trial court abused its discretion when it ordered Father to pay C.M.'s controlled expenses and gave Mother the parenting time credit. Mother observes that, as the custodial parent, she has historically paid C.M.'s controlled expenses and has taken C.M. to her medical appointments.

[23] Indiana's Child Support Guidelines ("Guidelines") "are based on the assumption the child(ren) live in one household with primary physical custody in one parent who undertakes all of the spending on behalf of the child(ren)." Guideline 6, Analysis of Support Guidelines cmt. The Commentary to Indiana Child Support Guideline 6 defines "controlled expenses" as follows:

> This type of expense for the child(ren) is typically paid by the custodial parent and is not transferred or duplicated. Controlled expenses are items like clothing, education, school books and supplies, ordinary uninsured health care and personal care.... "Education" expenses include ordinary costs assessed to all students, such as textbook rental, laboratory fees, and lunches, which should be paid by the custodial parent....

> The controlled expenses account for 15% of the cost of raising the child. The parenting time credit is based on the more time the parents share, the more expenses are duplicated and transferred. The controlled expenses are not shared and remain with the parent that does not get the parenting time credit. Controlled expenses are generally not a consideration unless there is equal parenting time. These categories of expenses are not pertinent for

litigation. They are presented only to explain the factors used in developing the parenting time credit formula.

[24] Mother historically paid the controlled expenses because she was the custodial parent. The parties are now sharing equal parenting time, and therefore, the trial court was required to designate one party as the parent responsible for the controlled expenses. Mother has not presented any evidence or argument that compels us to conclude that the court abused its discretion when it ordered Father to pay the controlled expenses.

[25] Mother also argues, and Father agrees, that the trial court abused its discretion when it calculated the parties' respective child support obligations and failed to give her credit for her previously born child who resides in her home. *See* Ind. Child Supp. Guideline 3(C). Therefore, we remand this case to the trial court to give Mother credit for her legal duty to support her previously born child and re-calculate Mother's child support obligation accordingly.

## Conclusion

[26] The trial court acted within its discretion when it modified its previous parenting time order and awarded Mother and Father shared physical custody of C.M. However, the trial court erred when it failed to give Mother credit for her previously born child in its child support calculation. Therefore, we remand this case for the limited purpose of recalculating the parties' child support obligations.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

May, J., and Brown, J., concur.